# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge If Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3512 | **DATE** | 4/15/2004 |
| **CASE TITLE** | Fieldturf International, Inc. vs. Tricxe Management Group, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___ ___.
(3) ☐ Answer brief to motion due ___ ___. Reply to answer brief due ___ ___.
(4) ☐ Ruling/Hearing on ___ ___ set for ___ ___ at ___ ___.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ ___ set for ___ ___ at ___ ___.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ ___ set for ___ ___ at ___ ___.
(7) ☐ Trial[set for/re-set for] on ___ ___ at ___ ___.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ ___ at ___ ___.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiffs' motion to compel production of documents [31-1] is granted in part and denied in part. Plaintiffs' request for fees associated with bringing this present motion is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

APR 1 6 2004 date docketed

Document Number

courtroom deputy's initials: hmb 

Date/time received in central Clerk's Office  mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIELDTURF INTERNATIONAL, INC., and FIELDTURF, INC. <br><br> Plaintiffs, <br><br> v. <br><br> TRIEXE MANAGEMENT GROUP INC., SPORTEXE CONSTRUCTION SERVICES, INC., SPORTEXE INTERNATIONAL, INC., and SPORTEXE, INC. <br><br> Defendants. | Case No. 03 C 3512 <br><br> Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION AND ORDER

This patent infringement action is before the Court on plaintiffs' motion to compel. For the reasons explained below, the motion is granted in part and denied in part.

## BACKGROUND

Unless otherwise noted, the following facts are taken from plaintiffs' Stipulated Third Amended Complaint and the parties' Initial Joint Status Report. Plaintiff Fieldturf International, Inc. is a Florida corporation which manufacturers, sells, and installs synthetic turf products in the United States. Plaintiff Fieldturf, Inc. is a Canadian corporation which designs synthetic turf products and distributes these products worldwide. Fieldturf, Inc. is the owner, by assignment, of U.S. Patent No. 6,338,885 (the "'885 patent") entitled "Synthetic Turf" which discloses and claims a synthetic grass sports surface for use in connection with, among other things, sporting activities such as soccer and football. Fieldturf, Inc. is also the owner, by assignment, of U.S. Patent No. 6,551,689 B1 (the "'689 patent") entitled "Synthetic Grass with Resilient Granular Top Surface Layer." FieldTurf



International, Inc. is the exclusive licensee from FieldTurf Inc. under the '885 and '689 patents for the right to manufacture, sell, offer to sell and install synthetic turf products in the United States. Defendants Triexe Management Group, Inc. ("Triexe"), Sportexe Construction Services, Inc. ("Sportexe Construction"), and Sportexe, Inc. supply and install artificial turf systems. Defendants' Answer states that defendant Sportexe International was dissolved on or about October 17, 2003.

Plaintiffs assert claims against defendants for infringement of the '885 patent and the '689 patent, for intentional interference with prospective economic advantage, and for common law conversion arising from the sale or offer to sell by defendants of synthetic turf products to the University of Wisconsin, the University of California at Berkeley, the Baltimore Ravens, and a fourth project in Ireland. Defendants have denied the material allegations of the Third Amended Complaint and three of the four defendants have asserted counterclaims. The counterclaims seek, among other things, a declaratory judgment on non-infringement as to the '885 patent and '689 patent as well as U.S. Patent No. 5,958,527 (the "'527 patent") entitled "Process for Laying Synthetic Grass." Defendants have additionally asserted counterclaims for alleged violations of § 43(a) of the Lanham Act and 15 U.S.C. § 2, tortious interference with contract, tortious interference with pre-contractual relations, and common law unfair competition based on plaintiffs' alleged misrepresentations to defendants' customers and prospective customers.

## DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) prescribes the scope of matters upon which a party may seek discovery. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ.

P. 26(b)(1). Trial courts have broad discretion in resolving matters relating to discovery. Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002). The discovery requests at issue in plaintiffs' motion to compel seek information relating to: (1) defendants' financial status and (2) the relationship between the corporate defendants. The Court discusses each of these categories in turn.

A.     **Defendants' Financial Status**

Plaintiffs' First Set of Document Requests seek, among other things, the following documents that refer or relate to defendants' financial status for the period six months prior to incorporation to the present: (1) shares issued by defendants (Request No. 2); (2) current assets and/or liabilities (Request No. 3); (3) director and officer compensation (Request Nos. 8 & 9); (4) stockholder dividends issued by defendants (Request No. 10); (5) tax and tax-related filings (Request No. 14); (6) bank accounts and/or bank account statements (Request No. 15); (7) payment of debts and/or liabilities (Request No. 16); (8) indemnifications given by defendants to any other defendant or any third party (Request Nos. 17 & 18); (9) transfer of assets between defendants (Request No. 19); and (10) transfer, loan or other exchange of monies between defendants (Request No. 20). Plaintiffs state that these requests are relevant to the determination of punitive and enhanced damages. Defendants object to these requests as overbroad and unduly burdensome. Defendants argue that no basis exists to demand financial records going back to the birth of defendants because only the defendants' present financial condition may be considered in determining the appropriate measure of punitive or increased damages.

Plaintiffs' infringement counts seeks enhanced damages, and their state law claim for intentional interference with prospective advantage seeks punitive damages. When punitive damages

are sought, a party's financial condition is at issue and discovery on that subject is relevant. Cruce v. Schuchmann, 1993 WL 139222, *1 (D. Kan. March. 30, 1993) (holding "[i]nformation of a party's net worth or financial condition is relevant . . . because it can be considered in determining punitive damages."); Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149, 151 (D. Kan. 1990). "[T]here can be no doubt that net worth is discoverable under Rule 26(b)(1) of the Federal Rules of Civil Procedure, as it regards a matter 'that is relevant to the claim' of a party: that is, plaintiff's punitive damages claim." Challenge Aspen v. King World Productions Corp., 2001 WL 1403001, * 3 (N.D. Ill. Nov. 9, 2001) (Schenkier, J.).

In the present case, defendants' present financial condition is relevant to plaintiffs' claim for punitive damages under federal and state law. Under 35 U.S.C. § 284, damages may be enhanced up to three time the compensatory award. The Federal Circuit has set forth nine factors, including a defendant's size and financial condition, that are to be considered when district courts are making a decision about enhanced damages. Read Corp. v. Portec, Inc., 970 F.2d 816, 926-27 (Fed. Cir. 1992); see also Manildra Milling Corp. v. Ogilvie Mills, Inc., 1991 WL 17610 (D. Kan. Jan. 31, 1991) (finding that discovery into a party's net worth is relevant to the issue of treble damages under 35 U.S.C. § 284). Moreover, under Illinois law, one of the relevant factors in determining punitive damages is the defendant's financial status. Pickering v. Owens-Corning Fiberglass Corp., 638 N.E.2d 1127, 1139 (Ill.App. 1994); Howard v. Zack Co., 637 N.E.2d 1183, 1194 (Ill.App. 1994).[1]

---

[1] The Court notes that neither party mentions the Seventh Circuit's decision in Zazu Designs v. L'Oreal, S.A., 979 F.2d 499, 508-09 (7th Cir. 1992), in which the court suggested that it is inappropriate to consider a corporate defendant's wealth or net worth in assessing punitive damages at least for claims based on federal law. See Kemezy v. Peters, 79 F.3d 33, 36 (7th Cir. 1996) (stating that there was merely a "suggestion in Zazu Designs that the defendant's net worth is irrelevant to the size of the award of punitive damages when the defendant is a corporation or other institution rather than an individual."); Pivot Point International, Inc. v. Charlene Products, Inc., 932 F.Supp.

However, defendants' objection to the broad scope of the plaintiffs' request for financial information is well-taken. Only current financial documents are relevant to a claim for punitive damages. See Audiotext Communications Network, Inc. v. US Telecom, Inc., 1995 WL 625962, * 4 (D. Kan. Oct. 5, 1995) (finding the current information of plaintiffs' net worth or financial condition relevant to the issue of punitive damages); Raiser v. O'Shaughnessy, 1992 WL 309541, * 1 (N.D. Ill. Oct. 21, 1992) (Moran, J.) (holding plaintiff's request for defendants' financial records would "be met by disclosure of the most recent of the types of documents described that substantially discloses the defendant's assets and liabilities."). Plaintiffs' request for non-current financial information is irrelevant to a punitive damages determination. Audiotext Communications Network, Inc., 1995 WL 625962 at * 4. Plaintiffs' motion to compel is granted with respect to Request Nos. 2, 3, 8-10, and 14-20 to the extent the information sought reveals defendants' current assets and liabilities.

Defendants also point out that plaintiffs and defendants are direct competitors. Defendants state that plaintiffs are attempting to use this proceeding to obtain financial information for competitive purposes which are not relevant to the claims or defenses in this action. Plaintiffs do not dispute that defendants are competitors. In fact, plaintiffs have stated that the "synthetic turf

---

220, 223 (N.D. Ill. Aug. 2, 1996).

In any event, plaintiffs' punitive damages claim here is based on state tort law, and Illinois law allows consideration of a defendant's net worth in determining punitive damages. Pivot Point International, Inc. v. Charlene Products, Inc., 170 F.Supp.2d 828, 839 (N.D. Ill. Oct. 2, 2001) (recognizing that Illinois treats wealth as a permissible consideration in setting the amount of punitive damages). Moreover, this Court has previously held that despite the Zazu Designs court's suggestion, a corporate defendant's financial information may be relevant to punitive damages for purposes of Rule 26. Equal Employment Opportunity Commission v. Staffing Network, L.L.C., 2002 WL 31473840 (N.D. Ill. Nov. 4, 2002); see also Jones v. Scientific Colors, Inc., 2001 WL 902778 (N.D. Ill. July 3, 2001).

industry is highly competitive." Plaintiffs' Resp. to Defs' Motion for a Temporary Restraining Order, p. 1. The Court recognizes that disclosure of confidential financial information to a competitor may cause a party great harm. Mid Continent Cabinetry, 130 F.R.D. at 152 (stating that "if a plaintiff and defendant were business competitors, disclosure of defendant's financial records to the plaintiff, even with a protective order, could cause the defendant great harm."). However, after balancing the confidentiality concerns of defendants against plaintiffs' need for access to the information, the Court finds that defendants' present financial information is discoverable on an outside counsel "attorneys' eyes only" basis. The Court believes this restriction on the scope of dissemination "strikes a proper balance between plaintiffs' right to discover relevant information and the defendants' confidentiality interests." Challenge Aspen, 2001 WL 1403001 at * 5.[2]

## B. Relationship Between the Corporate Defendants

Plaintiffs' discovery requests also seek additional financial records and various corporate documents to support plaintiffs' attempt to pierce the corporate veil of the defendants.[3] Plaintiffs

---

[2] The Mid Continent Cabinetry court suggested that where the parties are business competitors, a delay in discovery of financial information until a prima facie showing of entitlement to punitive damages is shown might be justified. The circumstances of this case do not justify a delay in the discovery of defendants' current financial information. The Court believes it is more efficient to promptly produce relevant financial information. Defendants have also not demonstrated that disclosure of current financial information to plaintiffs' outside counsel only and only for purposes of this litigation would cause defendants harm.

[3] Plaintiffs' document requests seek documents that refer or relate to: (1) the articles of incorporation of any of defendants (Request No. 1); (2) the issued shares of any of defendants, including when and where those shares were issues, and what compensation the shares were issued for (Request No. 2); (3) the current assets and/or liabilities of any of the defendants (Request No. 3); (4) the identity of the persons serving on the board of directors of any of defendants, including any and all changes to the board of directors, and the dates of those changes (Request No. 4); (5) the identity of the persons serving as officers of any of defendants, including any and all changes to the makeup of the officers, such as hiring, firing, promoting, demoting or other change in position

assert that defendants are essentially acting as a single corporate entity. According to plaintiffs, questions exist regarding which of the defendants are responsible for the conduct alleged because all of the defendants hold themselves out to the public as a single company, namely Sportexe, and as being able to "handle any aspect of a project, from initial design, to the final supply and installation of equipment." Pls' motion, pp. 5-6. Plaintiffs are concerned that "defendants are attempting to utilize a sham liability shield to allow their various corporate 'arms' to freely infringe, while protecting the real assets of the corporation in a parent company, namely Triexe." Pls' Reply, p. 2. Defendants contend that plaintiffs should not be permitted discovery relative to their corporate

---

(whether in name or otherwise), and the dates of those changes (Request No. 5); (6) the meetings of the board of directors of any of defendants, including but not limited to the minutes of those meetings (Request No. 6); (7) shareholder meetings for the shareholders of any of defendants, including but not limited to the minutes of those meetings (Request No. 7); (8) the compensation paid to each of the members of the board of directors of any of defendants, as well as any changes made to the compensation packages provided, and the dates for the initiation and change of the compensation packages (Request No. 8); (9) the compensation paid to each of the officers of any of defendants, as well as any changes made to the compensation packages provided, and the dates for the initiation and change of the compensation package (Request No. 9); (10) stockholder dividends issued by any of the defendants (Request No. 10); (11) the election of the board of directors for any of Defendants, including the votes undertaken by the shareholders and the results of those votes (Request No. 11); (12) insurance policies of any of defendants (Request No. 12); (13) licensing agreements by and between any of defendants (Request No. 13); (14) tax and tax-related filings done by or on the behalf of defendants; (Request No. 14); (15) bank accounts and/or bank account statements for any of the defendants (Request No. 15); (16) the payment of debts and/or liabilities owed by any one of Defendants by any and/or all of Defendants (Request No. 16); (17) indemnifications given by one or more of defendants to one or more of the other defendants (Request No. 17); (18) indemnifications given by one or more of defendants to any third party (Request No. 18); (19) transfer of assets between defendants, including compensation paid for such transfer and the date such transfer took place (Request No. 19); (20) the transfer, loan, or other exchange of monies from one or more of defendants to one or more of the other defendants (Request No. 20); (21) trademark applications undertaken on the behalf of any of defendants on the name "Sportexe" (Request No. 40); (22) licensing arrangements regarding the name "Sportexe" between any of defendants and any other party (Request No. 41). Request Nos. 3-20 are limited to the period of time from six months prior to the incorporation of Sportexe Construction Services, Inc., which was in 2001.

-7-

veil theory because there is no evidence of failing to maintain adequate corporate records, failing to comply with corporate formalities, commingling of assets, undercapitalization, or treating the assets of one corporation as the assets of another.

Defendants' objection to discovery regarding plaintiffs' corporate veil theory is overruled in part. It is not surprising the factual record has not been fully developed regarding the relationship among the defendants because the very purpose of discovery is to obtain relevant information. Nevertheless, the current record indicates that Sportexe Construction and Sportexe, Inc. are wholly-owned subsidiaries of Triexe. Triexe, Sportexe Construction, and Sportexe, Inc. have the same place of business in Fonthill, Ontario, Canada. Sportexe International also had a place of business in Fonthill, Ontario, Canada. Defendants confirm that each defendant has used the "Sportexe" mark. The Florida Secretary of State's online records regarding Triexe gives a "cross-reference name" of Sportexe Inc. Pls' Motion, Ex. B. Further online records from the Florida Secretary of State's office and the Georgia Secretary of State's office indicate that Triexe, Sportexe Construction, and Sportexe Inc. have common officers. Id., Exs. B, C, D. The website of "Sportexe" (www.sportexe.com) indicates that it has offices in Calhoun, Georgia and Lake Worth, Florida. Id., Ex. E. Plaintiffs state that Sportexe Construction and Sportexe Inc. operate out of the same Calhoun, Georgia and Lake Worth, Florida locations.

As an initial matter, the Court notes that neither side has analyzed whether state or federal common law governs the veil-piercing inquiry in a patent infringement action. Although this case is founded on federal question jurisdiction, Plaintiffs' Reply seems to assume, without discussion,

-8-

that Illinois' substantive law applies to the veil piercing issue.[4] Defendants' pleadings fail to cite any case law regarding the veil-piercing question. Because the parties have not argued the choice of law question, the Court will not disturb plaintiffs' assumption that Illinois law applies. The Court for purposes of this motion assumes that Illinois law applies without determining whether Illinois law is the proper choice of law. United States v. Bestfoods, 524 U.S. 51, 63 n.9 (1998); Vukadinovich v. McCarthy, 59 F.3d 58, 62 (7th Cir. 1995) (stating "choice of law, not being jurisdictional, is normally . . . waivable. . . .").

"The general rule, of course, in Illinois as elsewhere, is that a shareholder qua shareholder, and a parent, subsidiary, or other affiliate, qua affiliate, is not liable for a corporation's debts." Browing-Ferris Industries of Illinois, Inc. v. Ter Maat, 195 F.3d 953, 959 (7th Cir. 1999). "However, a court may disregard a corporate entity and pierce the veil of limited liability where the corporation is merely the alter ego or business conduit of another person or entity." Peetoom v. Swanson, 778 N.E.2d 291, 295-96 (Ill.App. 1992). In determining whether a corporation is really a dummy or sham for another dominating entity or individual, courts look at a number of factors, including: inadequate capitalization; failure to issue stock; failure to observe corporate formalities; nonpayment of dividends; insolvency of the debtor corporation; nonfunctioning of other officers or directors; absence of corporate records; commingling of funds; diversion of assets from the corporation by or to another dominant entity or individual; failure to maintain arm's-length relationships among related

---

[4] Plaintiffs cite three cases regarding the piercing of the corporate veil issue. Two of the three decisions applied Illinois law. See Van Dorn Co v. Future Chem. & Oil Corp., 753 F.2d 565, 570 (7th Cir. 1985); Holland v. Joy Candy Mfg. Corp., 145 N.E.2d 101 (Ill.App. 1957). The other case cited by plaintiffs, Steven v. Roscoe Turner Aeronautical Corp., 324 F.2d 157 (7th Cir. 1963), relied primarily on a treatise as the source for its pronouncement of a rule for the disregard of corporate entities. Van Dorn, 753 F.2d at 571.

entities; and whether the corporation is a mere facade for the operation of another dominant entity or individual. Cosgrove Dist. v. Haff, 798 N.E.2d 139, 141-42 (Ill.App. 2003). With respect to whether adhering to the fiction of a separate corporate existence is appropriate, courts also look to whether "unfairness ... akin to fraud or deception" or "the existence of a compelling public interest" exists. Hystro Products, Inc. v. MNP Corp., 18 F.3d 1384, 1390 (7th Cir.1994).

Plaintiffs' requests are relevant to several veil piercing factors, such as: (1) the failure to maintain adequate corporate records or to comply with corporate formalities (Request Nos. 1, 6, 7, and 11); (2) the commingling of funds or assets (Request Nos. 15, 19, 20); and (3) undercapitalization (Request Nos. 14-18). In addition, the failure to issue shares of stock (Request No. 2) and the nonpayment of dividends (Request No. 10) are relevant factors in determining whether to pierce the corporate veil. Cosgrove, 798 N.E.2d at 141. Although common officers and directors (Request Nos. 4 and 5) is an insufficient basis, by itself, for piercing the corporate veil, such evidence in combination with other factors may be sufficient to pierce defendants' corporate veil. See Hystro, 18 F.3d at 1389 (stating "[s]tock control and the existence of common officers and directors are generally prerequisites to the piercing of the corporate veil although these factors alone will not suffice."); Sumner Realty Co. v. Willcott, 499 N.E.2d 554, 557 (Ill.App. 1986) (holding separate corporate entities may not be disregarded merely because the two share common officers); Holland v. Joy Candy Manufacturing Corp., 145 N.E.2d 101 (Ill.App. 1957) (upholding trial court's finding that one corporate defendant was the mere instrumentality of the other corporate defendant where the "affairs of the two corporations were so managed and controlled by the same interlocking officers, directors, and single shareholder, as to constitute one corporate entity in its dealings with creditors"). Finally, defendants' current assets and/or liabilities (Request No. 3) are relevant to

-10-

determining whether defendants are inadequately funded, whether funds are being commingled or whether one entity is treating the assets of another as its own.[5]

Plaintiffs' Request Nos. 8, 9, and 10 seek documents that refer or relate to the compensation paid to the board of directors and officers of defendants as well as stockholder dividends issued by any of the defendants. Plaintiffs argue that such requests are relevant to determining "the treatment of the assets of one corporation as the assets of another, or as assets of the shareholders directly." Pls' Reply, p. 4. While the compensation of directors and officers and shareholder dividends might be relevant if plaintiffs were seeking to pierce the corporate veil of defendants and hold the directors, officers, or shareholders liable for the corporate defendants' obligations, they do not seem to be relevant to determining whether one corporate defendant is treating the assets of another corporate defendant as its own. Because plaintiffs have not alleged that they are seeking to hold the defendants' shareholders, directors, of officers liable for the defendants' obligations, Request Nos. 8, 9, and 10 are denied as irrelevant to plaintiffs' veil piercing theory.

---

[5] In their supplemental memorandum, defendants contend that responding to Request Nos. 3, 14, 15, and 16 would be unduly burdensome and disruptive to defendants' business because these requests seek documents for the period six months before defendants' incorporation date. In support of this contention, defendants' rely on an affidavit from James Schinkel, the Vice President for Business Development for Triexe. Schinkel's affidavit points out that Triexe has been in business since the early 1980's. Defendants' burdensomeness objection and Schinkel's affidavit appear to be based on an erroneous belief that plaintiffs' requests seek documents dating six months prior to defendants' incorporation, which would be back to the 1980's for Triexe. As plaintiffs clarified in their Reply, they only seek information for the period six months prior to the incorporation of Sportexe Construction, which was in 2001. The Court is not persuaded that this less than five year period of discovery is of such little potential benefit compared with the burden or expense imposed that it should be limited. See Fed.R.Civ.P. 26(b)(2). Having said this, the Court is mindful that it does not have specific knowledge of all of the subcategories of documents that may be involved in responding to plaintiffs' requests and the actual burden of production. The Court directs the parties as they become more familiar with the subcategories involved and the likely burdensomeness, that they confer about producing some of the requested materials in full when necessary and some by sample when appropriate, with the objective of reducing the time and cost of production and review.

Finally, the Court is unpersuaded that the defendants' insurance policies (Request No. 12), licensing agreements by and between defendants (Request No. 13), trademark applications undertaken on behalf of defendants on the name "Sportexe" (Request No. 40), and licensing arrangements regarding the name "Sportexe" between defendants and any other party (Request No. 41) are relevant to plaintiffs' corporate veil piercing theory. Without explanation, plaintiffs state that these requests are relevant to ascertaining whether the corporate defendants are commingling assets and liabilities. The relevancy of these categories of documents to determining whether defendants commingle assets and liabilities is not self-evident to the Court. Plaintiffs have not adequately demonstrated their relevancy. Absent an explanation as to the relevance of insurance policies, licensing agreements, and trademark applications to the veil piercing inquiry, plaintiffs' motion to compel their production is denied without prejudice.

## CONCLUSION

For the reasons stated above, plaintiffs' motion to compel is granted in part and denied in part. Plaintiffs' request for fees associated with bringing this present motion is denied.

ENTER:

Nan R. Nolan
United States Magistrate Judge

Dated: 4/14/04